[Civ. No. 1853. Third Appellate District.—October 22, 1919.]

MOULTON IRRIGATED LANDS COMPANY (a Corporation), Respondent, v. M. T. JONES et al., Appellants.

[1] CONTRACTS—GRANT OF RIGHT OF WAY FOR CANALS—CONSIDERATION—DISTRIBUTION OF WATERS ON LANDS OF GRANTOR—DUTY OF GRANTEE.—A contract granting a right of way through lands in and along a certain slough for the purpose of constructing and maintaining a canal for irrigation purposes, and for storing and conveying water therein over and across said lands, in consideration of the construction and maintenance of certain bridges and a free water right for the water necessary for the irrigation of the lands of the grantor, and providing that for the water actually used for irrigation the grantor shall pay the same rate and be subject to the same rules, terms, and conditions as all other water users, does not impose any duty upon the grantee to raise the water by artificial means above the level of the water in the slough that it might by the force of gravity be distributed over said lands.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Brown & Albery for Appellants.

Thomas Rutledge for Respondent.

BURNETT, J.—The action was brought to recover the sum of $1,472.50 for water furnished by plaintiff to defendants for irrigation, and plaintiff had judgment as prayed for, from which the defendants have appealed. The contract, which is the basis of the action, was executed on December 17, 1912, by defendant, Jones, and one Wm. K. Brown, the assignor of plaintiff. By the terms of said contract Jones granted to Brown a right of way through lands of the former in and along a certain slough, known as Drumhiller Slough, for the purpose of constructing and maintaining a canal for irrigation purposes and for storing and conveying water therein over and across said land belonging to Jones, which was specifically described in said

contract. A right of way was also conveyed for two cer·
tain canals connecting with said slough. One of the con-
siderations moving from Brown was the covenant binding
him and his successors or assigns to construct and main-
tain across said Drumhiller Slough upon the land of
Jones, as he might thereafter designate, two bridges at
least eighteen feet wide, each capable of sustaining a bur-
den of not less than five tons in weight, and also to
construct and maintain on each of said canals suitable
means of crossing the same and of sufficient strength to
safely carry a combined harvester and kindred machinery.
It was further convenated and agreed that Jones should
have "a free water right for the water necessary for the
irrigation of his lands [described in said contract] as long
as said proposed irrigation system should be used in any
part thereof for such purposes, such water right to be
appurtenant to said land." It was further provided:
"For the water actually used by the party of the first part
[Jones] for irrigation in and upon said lands aforesaid,
he shall pay therefor at the same rate and be subject to
the same rules, terms and conditions as all other water users
along said proposed system, but shall only be required to
pay each year for such water for irrigation purposes as shall
apply only to such of his lands as are actually irrigated."
Said contract contains certain other important provisions,
but they need not be quoted, as the foregoing involves the
only question at issue in the present case. Appellant ad-
mits that there is "virtually but one question in this case:
Was the defendant, Jones, justified, as a matter of law, in
incurring the expense for pumping water from the canal
or slough and charging that expense as an offset to the
water rates?"

In explanation of this it may be said that no controversy
appears to have arisen between the parties until the year
1915. It is also admitted that during the years 1915 and
1916, covering the entire period in controversy, water was
used from said slough to irrigate the lands of defendant
Jones. It is further conceded that the rate for said irriga·
tion was established at five dollars per acre and that apply-
ing said rate to the number of acres irrigated by said water
the amount would be the sum claimed by plaintiff. It
appears, however, that about seventy-five or eighty acres of

Jones' land was at such a level that, in order to distribute the water over it, it was necessary to use pumps or other mechanical contrivance to raise the water above the level of said slough. It appears, further, that a demand was made by Jones upon plaintiff to so raise the water that it might by the force of gravity be distributed over said land. Plaintiff neglected and refused to comply with this demand, and thereupon Jones put in the necessary pumps for said purpose and thereby incurred an expense of something over one thousand dollars, and it is for this expense that he claims an offset against the claim of plaintiff. The question, therefore, involves the proper construction of said provision of the contract of December, 1912. It is to be observed that there is nothing in the express terms of the contract that required plaintiff to incur any additional expense besides the construction of said canal and bridges and crossings and the pumping of the water out of Sacramento River into said slough. [1] There was no promise or agreement to distribute the water over the land of Jones or to raise it by any artificial means above the level of the water in said slough. The easy and natural construction of the language used leads us to the conclusion that for the right of way granted by Jones the water from the river would be pumped into said slough and that he should have a right to divert what was necessary of said water for the irrigation of his land, paying therefor the amount that was charged to other parties using the same, and being subject to the same rules, terms and conditions. The claim of appellant, however, is based upon the fact that in 1915 and 1916 respondent introduced water-wheels for the purpose of irrigating some high land belonging to itself and to some others, which it had sold to said parties under special agreement to distribute the water over said lands. We are satisfied, however, that the contract made by the parties did not contemplate that plaintiff's assignor or his successors in interest should be bound to incur this additional expense for the purpose of irrigating the lands of Jones. The expression, "rules, terms and conditions," was doubtless intended to include the rate, and the rules and regulations which might thereafter be adopted for the use of water, such as the hours for its distribution, or the order or proportion in which various property owners

should use it at certain seasons of the year, or the distribution of it according to the quantity of water that might be available. The very expression used, "subject to," would indicate a burden to be imposed upon appellant rather than an additional privilege to be enjoyed by him. The contention of appellant really amounts to the claim that respondent is bound to distribute the water over his land. With equal propriety he might claim that respondent is under obligation to grade his land, to construct checks and to do whatever else is necessary to properly and evenly distribute the water over it. The unreasonableness of appellant's claim is aptly illustrated in the instance before us. The expense of raising the water by pumping for the seventy-five or eighty acres in controversy was, as we have seen, something over one thousand dollars. The charge for water used in said irrigation at five. dollars per acre could not be over four hundred dollars; therefore, according to the theory of appellant, respondent must pay him six hundred dollars for the privilege of furnishing him water for the purpose of irrigating his land. Such construction, we think, was never contemplated by the parties and is not within the fair import of the terms used in the contract. We are satisfied that the judgment of the lower court was eminently sound. It is, therefore, affirmed.

Ellison, P. J., *pro tem.*, and Hart, J., concurred.